UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:15-cv-80521-DMM

JEAN PAVLOV, individually and as Personal
Representative of the Estate of MATTHEW POLLOW,
deceased, for the benefit of Jean Pavlov, surviving
parent, and the Estate of MATTHEW POLLOW,

                              Plaintiff,

v.

RIC L. BRADSHAW, in his official capacity as Sheriff
of Palm Beach County, Florida; and Deputy EVAN
ROSENTHAL, in his individual capacity,

                              Defendants.

_____/

## PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF CHRISTOPHER LAWRENCE PURSUANT TO *DAUBERT V. MERRELL PHARMACEUTICALS, INC.*

Plaintiff Jean Pavlov, as Personal Representative of the Estate of Matthew Pollow, for the

benefit of Jean Pavlov, and the Estate of Matthew Pollow, by and through her undersigned

attorneys, hereby moves to exclude expert testimony of Christopher Lawrence, and as grounds

for this motion states as follows:

1.      Christopher Lawrence has been disclosed as an expert witness by Defendants Ric

L. Bradshaw and Evan Rosenthal.  The opinions Mr. Lawrence offers in his report dated October

22, 2015, and his deposition taken on December 10, 2015, fail to comport with the threshold

defined in Daubert v. Merrell Pharmaceuticals, Inc., 509 U.S. 579 (1993), and must therefore be

excluded.

2.      On November 6, 2015, Defendants Bradshaw and Rosenthal served their expert

witness disclosure in this action, consisting of a 39 page report from Mr. Lawrence. (Lawrence's

Report, attached as Exhibit A).  Mr. Lawrence's report contains the following listed opinions:

a.  Deputy Rosenthal believed that Mr. Pollow possessed a knife capable of causing grievous bodily harm or death to the officer.  Deputy Rosenthal, consistent with current prudent police training, responded by providing advice and warning to Mr. Pollow and clearly indicated what Mr. Pollow had to do to avoid force being used.  Deputy Rosenthal retreated while giving Mr. Pollow repeated commands and warning as he circled the patrol car backwards.  At the point where Deputy Rosenthal believed Mr. Pollow had commenced an edged weapon attack in close proximity to the officer, Deputy Rosenthal fired a total of five rounds.

b.  Given the fact that Deputy Rosenthal struck Mr. Pollow with four of the five shots fired, Mr. Pollow was relatively close to Deputy Rosenthal when the shots were fired rapidly.

c.  The first round fired struck Mr. Pollow on the side of the neck.  Mr. Pollow began turning to his right while standing relatively upright.  The second shot fired by Deputy Rosenthal entered Mr. Pollow's upper back on an angle and ultimately severed his spine, consistent with the medical examiner's report.  The third round fired struck Mr. Pollow as he began falling while continuing to rotate to his right.  This shot entered Mr. Pollow's lower back and travelled in the path described by the medical examiner.

d.  The fourth round fired grazed Mr. Pollow's back.  The only way for the pattern of wounds to be consistent with rapid firing by Deputy Rosenthal would be if Mr. Pollow continued to rotate to this right as he fell.  Mr. Pollow's back would have to be parallel to the flight of the bullet fired by Deputy Rosenthal in order to

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 3 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 3

create this grazing wound.   This position is consistent with the medical examiner's report.

e.   The round that struck the rear of the white BMW parked nearby was either the fourth or fifth shot fired by Deputy Rosenthal.  Four of the five shots fired by the officer struck Mr. Pollow before he fell to the ground.

f.   Given the fact that one of the rounds fired by Deputy Rosenthal struck the rear of the BMW, Deputy Rosenthal is mistaken in his recollection with respect to his path of travel.  Consistent with the information provided with Deputy Cercy, Deputy Rosenthal continued to retreat while circling the parked police patrol car.

g.   The fact that five shots were fired in this circumstance, is in my opinion, consistent with current police use of force training and practice while in the performance of an officer's duties.

3.   Mr. Lawrence was deposed on December 10, 2015.  Based on his deposition testimony, it is obvious that: he is not qualified to testify competently regarding the matters upon which he intends to opine; his proffered opinions are not reliable; his testimony is not based on scientific, technical or specialized expertise; and his testimony will not assist the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or determine facts that are at issue in this case.  Instead of assisting the jury, Mr. Lawrence's testimony would be unduly prejudicial to Plaintiff.  See Daubert, 509 U.S. 579.  As a result, Mr. Lawrence should be precluded from proffering his unreliable opinions at trial, or in a submitted report.

## **MEMORANDUM OF LAW**

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 4 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 4

In Daubert, the Supreme Court held that Federal Rules of Evidence 104(a) and 702 impose a gatekeeping role upon federal judges, requiring judges to screen proffered expert testimony to ensure that the evidence is both reliable and relevant prior to admission at trial. Daubert, 509 U.S. 579, 589-590 (1993). The burden is on the party offering the proposed expert opinion testimony to prove by a preponderance of the evidence that the testimony satisfies the requirements for admissibility and reliability. Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1107 (11th Cir. 2005); Phillips v. American Honda Motor Co., 238 Fed. Appx. 537 (11th Cir. 2007). A "court must decide any preliminary question about whether a witness is qualified…or evidence is admissible." Fed. R. Evid. 104. Also, the Rules provides for the admissibility of expert testimony setting forth the following parameters:

> "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. See Kilpatrick v. Breg, Inc., 613 F. 3d 1329, 1335 (11th Cir. 2010); Hendrix v. Evenflo Co., Inc., 609 F. 3d 1183, 1194 (11th Cir. 2010); Guinn v. Astrazeneca Pharmaceuticals LP, 602 F. 3d 1245, 1252 (11th Cir. 2010). Purported expert testimony "must be supported by appropriate validation" or "good grounds, based on what is known." Daubert, 509 U.S. at 590.

In Daubert, the Supreme Court provided factors to assist courts in the evaluation of the admissibility of expert testimony, including: 1) the theory or technique can be and has been tested; 2) the theory or technique has been subjected to publication and peer review; 3) the known or potential error rate of the theory or technique; and 4) whether a theory or technique is

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 5 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 5

generally accepted in the scientific community. Id. at 593-94; Wilson v. Taser Int'l, Inc., 303 Fed. Appx. 708, 713 (11th Cir. 2008). The Supreme Court has held that these Daubert factors are not a definitive checklist; therefore judges may apply some but not all of them, so long as the trial court determines that the testimony is relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 138 (1999). This inquiry must focus "solely on the principles and methodology [of the experts], not on the conclusions they generate." Daubert, 509 U.S. at 595.

In order to satisfy the relevance requirement of Daubert, the Court must ensure that the proposed expert testimony is helpful to the trier of fact in resolving factual disputes. Daubert, 509 U.S. at 591. "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant fit." Bitler v. A.O. Smith Corp., 391 F. 3d 1114, 1121 (10th Cir. 2004) (internal citations omitted).

The Court must consider the proffered expert testimony with the understanding that "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." U.S. v Frazier, 387 F. 3d 1244, 1260 (11th Cir. 2004). Expert testimony is not admissible if it is speculative. See General Electric, Corp. v Joiner, 522 U.S. 136, 146 (1997) (a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered). In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 157 (1999), the Supreme Court made clear that testimony based solely on the experience of an expert would not be admissible. The expert's conclusions must be based on sound scientific principles and the discipline itself must be a reliable one. The key consideration is whether the expert "employs in the court room the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id.

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 6 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 6

"While vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence, the Court is an essential gatekeeper and in all cases must take care to weigh the value of expert testimony against its potential to mislead or confuse." Hewitt v. Liberty Mut. Group, Inc., 268 F.R.D. 681, 685 (M.D. Fla. 2010) (internal citations omitted). Therefore, expert testimony that does not meet these standards should be excluded. It is incumbent upon the district court to act as a "gatekeeper" to ensure that speculative and unreliable opinions do not reach the jury.

**II. Christopher Lawrence's opinions listed in his report**

*a.* *Deputy Rosenthal's belief that Matthew Pollow possessed a knife and that Deputy Rosenthal acted consistent with general police training*

Mr. Lawrence's opinion on this issue is entirely factually based; does not offer any scientific, technical, or specialized knowledge that would assist the trier of fact; and improperly invades the province of the jury. (Lawrence's Report, p. 31-32). This opinion is merely a summary of Defendant Rosenthal's deposition testimony, and the jury is capable of interpreting these facts without the assistance of Mr. Lawrence. (Rosenthal's deposition, attached as Exhibit B, 241:4-7; 177-179:14-2; 277:12-16; 263-264: 21-8; 208: 11-16).

The Court should preclude Mr. Lawrence from offering this proffered testimony at trial because "[w]hen the trier of fact is 'entirely capable of determining' issues in the case 'without any technical assistance from…experts', expert testimony is unhelpful and must be excluded from the evidence." Hendrix v. Evenflo Co., Inc., 255 F.R.D. 568, 579 (quoting City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 565 (11th Cir. 1998)). "Otherwise, there is a risk the trier of fact will give the expert testimony undue weight on account of its special

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 7 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 7

status."  Id. (citing Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1111 (11th Cir. 2005)).

Mr. Lawrence acknowledged that Defendant Rosenthal's actions being "consistent with current prudent police training," was a broad opinion, that he was not asked (by defense counsel) for a particular opinion on Defendant Rosenthal's specific training.  Instead, he used the broader perspective of the general training officers receive in respect to facing an edged weapons attack, particularly in North America.  (Lawrence's deposition, attached as Exhibit C, 226-227: 18-10). This portion of his proffered testimony should be excluded because Mr. Lawrence failed to utilize Defendant Rosenthal's specific training with PBSO in reaching his opinion, and the use of a "broader" perspective simply does not pass muster under Daubert.  See McClain v. Metabolife, Inc., 401 F.3d 1233, 1244 (11th Cir. 2005) (Precluding the proffered testimony of a pharmacological expert, stating that in the Daubert context, phrases such as 'broad principles of pharmacology' have little value).

This opinion should also be excluded because Defendant Rosenthal, a lay witness in this case, has offered deposition testimony that his actions were consistent with the training he received at PBSO, and therefore any "specialized knowledge" on this issue is unnecessary in assisting the jury in deciding the issues of this case.  (Rosenthal's deposition, 307- 310:11-6). See  Hendrix, 255 F.R.D. at 579.

### b.    Matthew Pollow was relatively close to Defendant Rosenthal

Mr. Lawrence lacks the qualifications to testify about the distance between Matthew Pollow and Defendant Rosenthal when Matthew Pollow was shot (Lawrence's report, p.32); Mr. Lawrence did not utilize any scientific, technical, or specialized knowledge in reaching this opinion; Mr. Lawrence testified during his deposition that he did not know how close they were

when the shots were fired; and he based his opinion on Defendant Rosenthal's police report.  Mr. Lawrence's attempt to somehow boost the credibility of Defendant Rosenthal by stating he was "relatively close" to Matthew Pollow when he fired his weapon is the type of testimony <u>Daubert</u> seeks to prevent.

Mr. Lawrence at first testified during his deposition that the distance between Defendant Rosenthal and Matthew Pollow, when Defendant Rosenthal fired his weapon, was between six (6) feet and ten (10) feet, or between six (6) feet and twelve (12) feet.  (Lawrence's deposition, 148-149: 9-7). However, Mr. Lawrence later acknowledged during his deposition that he did not know how close Matthew Pollow and Defendant Rosenthal were when the shots were fired, and he used the reference of six (6) feet because that was one of the distances Defendant Rosenthal mentioned in his report.  (Lawrence's deposition, 204:6-20).  His opinion, which is clearly based on Defendant Rosenthal's report, should be excluded on that basis alone, because "[e]xpert opinions ordinarily cannot be based on opinions of others whether those opinions are in evidence or not."  <u>American Key Corp. v. Cole Nat. Corp.</u>, 762 F.2d 1569, 1580 (11th Cir. 1985).

Mr. Lawrence's feeble and unsupported opinion that Matthew Pollow and Defendant Rosenthal were "relatively close" when the shots were fired, does not meet the <u>Daubert</u> factors in that it is not based on any scientific, technical, or specialized knowledge; his theory has not been tested; has not been subjected to publication and peer review; and it is not generally accepted in the community of law enforcement.  Notwithstanding, the term "relatively close" is extremely vague and does not assist the jury in providing any parameters within which to determine the distance this term implies.

"Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 9 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 9

testimony.' " <u>Feliciano v. City of Miami Beach</u>, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012)

quoting <u>Clena Inv., Inc. v. XL Specialty Ins. Co.,</u> 280 F.R.D. 653, 660, No. 10–62028, 2012 WL

266422, at *6 (S.D. Fla. 2012).  Mr. Lawrence is a former police officer in Canada, and his

highest level of education is a Master of Arts in Leadership and Training from Royal Roads

University in Canada.  (Lawrence's CV attached as <u>Exhibit D</u>).  Indeed, he has trained police

officers in the use of force, but he lacks the minimal qualifications that would permit him to

testify about the distance between Matthew Pollow and Defendant Rosenthal when the shots

were fired.  Mr. Lawrence is not a Pathologist, a trajectory/ballistics expert, or a forensic

scientist.  Furthermore, he does not apply any scientific, technical, or specialized knowledge in

determining the distance between Matthew Pollow and Defendant Rosenthal, thereby failing to

comport with this requirement of <u>Daubert</u>.  <u>See  Fed. R. Evid. 702.</u>  Mr. Lawrence's proposed

testimony concerning the distance between Matthew Pollow and Defendant Rosenthal should

accordingly be excluded.

   *c.*   ***The order of the shots fired by Defendant Rosenthal***

   Mr. Lawrence's next three opinions, concerning the order of the shots fired by Defendant

Rosenthal, should also be excluded because Mr. Lawrence lacks the qualifications to testify to

this issue, and also does not utilize any scientific, technical, or specialized knowledge in reaching

these opinions (Lawrence's Report, p. 32).  "An expert opinion is inadmissible when the only

connection between the conclusions and the existing data is the expert's own assertions."

<u>McDowell v. Brown</u>, 392 F.3d 1283, 1301-1302 (11th Cir. 2004).  Dr. Gertrude Juste, the

Assistant Medical Examiner of Palm Beach County, a Board Certified Physician in Anatomic

Pathology, Clinical Pathology, and Forensic Pathology, performed the autopsy of Matthew

Pollow after his death.  Dr. Juste certainly possesses the qualifications to offer an opinion on the

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 10 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 10

issue of the order of the shots, but testified that she did not know the order in which the gunshot wounds impacted Matthew Pollow. (Juste's deposition, 7: 21- 23; 42: 9-11; 57: 4-14, attached as Exhibit E).

Mr. Lawrence, who has no medical training and no educational credentials in pathology, testified during his deposition that often you cannot determine the order of the bullets fired, and he frequently does not give the order of bullets fired.  (Lawrence's deposition, 228-229: 18-4). He went on testify that he did not know if the first shot hit the BMW, if it was the shot that impacted Matthew Pollow's back, and that he "thinks" the first shot hit Matthew Pollow under his chin.   (Lawrence's deposition, 232: 13-25).   Based on his deposition testimony, which conflicts with his written report in which he states the round that struck the BMW was either the fourth (4th) or fifth (5th) shot, it is clear that his testimony should be excluded.  He did not apply any scientific, technical, or specialized knowledge; his theory has not been tested; has not been subjected to publication and peer review; and it is not generally accepted in the scientific community.   Furthermore, his inconsistent opinions on the order of the shots underscore their inadmissibility.

### d.      Defendant Rosenthal's mistaken recollection of the subject incident

Mr. Lawrence should be precluded form offering testimony related to this opinion, because it is a lay opinion without which any scientific, technical or specialized knowledge is required in order to assess and this testimony weighs on the credibility of Defendant Rosenthal (Lawrence's Report, p. 32).  Notwithstanding the lack of such knowledge to offer an opinion on this issue, Mr. Lawrence failed to apply any scientific, technical, or specialized knowledge to the facts of the instant case.

Defendant Rosenthal testified during his deposition that his version of how the subject incident occurred, as he relayed during his "walk-through,"[1] hours after the shooting, was exactly how the incident happened.   (Rosenthal's deposition, 196-197: 19- 3).   Mr. Lawrence is attempting to somehow "rehabilitate" Defendant Rosenthal, even though Defendant Rosenthal does not dispute his own recollection of the event during his walk-through testimony.

In support of his claim that "when not under life-threatening stress, humans have a limitation on what they can attend to within their environment", Mr. Lawrence discusses a study where participants were asked to watch a video of two groups of people, after which the participants were asked a series of questions related to their recollections of what they saw, in assessing their attention levels. (Lawrence's Report, p. 23-24 ¶ 104-109).   This study lacks any scientific reliability, and lacks any relevance to the facts of the instant case.   "[N]othing in either Daubert of the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."   Cooper v. Marten Transp., LTD., 539 Fed. Appx. 963, 966 (11th Cir. 2013) (internal citations omitted).   If the proposed expert's opinion relies primarily upon his experiences and knowledge, the court must satisfy itself that the proposed expert has appropriately explained how his experience leads to the conclusion reached, why the experience provides sufficient basis for the opinion and how the experience is reliably applied to the facts. See  U.S. v. Brown, 415 F.3D 1257, 1269 (11th Cir. 2005).

This study was not applied to the facts of the incident in an effort to demonstrate its reliability or relevance.  Watching a video, and asking the participants whether they saw a gorilla

---

[1] A "walk-through" occurs after an Officer has been involved in a shooting.  The Officer is sworn under oath by the investigating Detective, and summarizes the event while being recorded on video.

cannot under any circumstances be applied to Defendant Rosenthal's state of mind or what he recalled about the subject incident.

Mr. Lawrence goes on to state that "[n]arrowly focusing on Mr. Pollow may have taken up all of Deputy Rosenthal's useful field of view", and that "[s]tress is known to potentially impact and mold our memory and will be influenced by expectations and stress" in his efforts to explain that Defendant Rosenthal was mistaken in his path of travel leading up to the shooting (Lawrence's report, p. 25-26). Notwithstanding the lack of relevance and application of one's "useful field of view" to the facts of this case, Mr. Lawrence testified during his deposition that he did not know whether Matthew Pollow took up all of Defendant Rosenthal's field of vision. (Lawrence's deposition, 202-203: 24-11). Mr. Lawrence's inability to apply his theory to the facts of this case renders his opinion on this issue inadmissible pursuant to Daubert.

Regarding Mr. Lawrence's reference to stress somehow influencing Defendant Rosenthal's version of events, Mr. Lawrence lacks any qualifications that would permit him to offer opinions on this matter, and does not apply any studies or any specialized knowledge to the facts of this case. During his deposition, Mr. Lawrence testified that because Defendant Rosenthal "got turned around in his understanding of what took place", this factor indicates that Defendant Rosenthal was under stress at the time of the event. (Lawrence's deposition, 187: 7-13). Mr. Lawrence is not trained in psychology, and he fails to offer any studies similar to the incident at hand to substantiate his testimony. He never spoke to Defendant Rosenthal about the event (Lawrence's deposition, 108-109: 21-9), and he fails to cite to one single study where police officers under similar circumstances were asked a series of questions on their stress level, their perceptions, or their recollection of facts surrounding a shooting. Instead, Mr. Lawrence offers a study about whether participants watching a video may have witnessed a gorilla.

Mr. Lawrence's attempt to explain Defendant Rosenthal's mistaken version of events is akin to expert witnesses attempting to explain the unreliability of eyewitness testimony. Courts have routinely precluded such expert testimony, holding that "the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury – determining the credibility of witnesses." U.S. v. Hall, 165 F.3d 1095, 1107 (7th Cir. 1999).

In U.S. v. Carter, 410 F.3d 942 (7th Cir. 2005), the defendant's expert, psychologist Geoffrey Loftus, sought to inform the jury that an eyewitness' memory can sometimes be inaccurate. Id. at 950. Specifically, and strikingly similar to the facts of the instant case, Loftus planned to offer opinions about factors that could affect memory, including the **circumstances surrounding the event in question and the amount of stress on the eyewitness**. Id. This is precisely the line of testimony Mr. Lawrence is seeking to offer at trial. As the Court in Carter noted, "jurors understand that memory can be less than perfect." Id. Since it is clear the jury can determine for themselves that memory can be imperfect, Mr. Lawrence's opinion on this issue will not assist jury in determining the facts at issue.

The Eleventh Circuit has also "held that expert testimony regarding eyewitness reliability [is] inadmissible." U.S. v. Fred Smith, 122 F.3d 1355, 1357 (11th Cir. 1997) citing U.S. v. Holloway, 971 F.2d 675, 679 (11th Cir.1992), cert. denied, 507 U.S. 962 (1993); U.S. v. Benitez, 741 F.2d 1312, 1315 (11th Cir.1984), cert. denied, 471 U.S. 1137 (1985); U.S. v. Harris, 995 F.2d 532, 534 (4th Cir. 1993) ("Until fairly recently, most, if not all, courts excluded expert psychological testimony on the validity of eyewitness identification."). "[T]he evaluation of an eyewitness' testimony is precisely the kind of analysis that is reserved for the jury." U.S. v. Smith, 148 Fed. Appx. 867, 872 (11th Cir. 2005).

In <u>Smith</u>, the defendant argued that the district court erred by excluding the testimony of Dr. Michael Leippe, an expert in the fields of memory and perception.  <u>Id.</u>  Dr. Leippe would have testified about the lack of correlation between certainty and accuracy; the weapon-focus effect; and the impact of stress on memory.  "In *United States v. Thevis*, 665 F.2d 616, 641 (5th Cir. Unit B 1982) (superseded by statute on other grounds), we concluded that a district court did not err in excluding proffered expert testimony about eyewitness reliability because we concluded that such testimony does not assist the jury. We reaffirmed this conclusion, post-Daubert, in *United States v. Smith*, 122 F.3d 1355, 1357–59 (11th Cir.1997)…" <u>Id.</u>

Mr. Lawrence's education, qualifications, and experience, pale in comparison to those of the doctors cited in the cases above, whose respective testimony was disallowed on the grounds of their inability to assist the jury.  Defendant Rosenthal is one of only two witnesses to this incident, including the other responding officer, Deputy Cercy.  His credibility is therefore critical, and the Court should not permit Mr. Lawrence to steal Plaintiff's attempts at cross-examining Defendant Rosenthal about what occurred on the night of the subject incident, through his unfounded and inapplicable studies regarding stress and memory.

     *e.*     ***Defendant Rosenthal's firing of five shots was consistent with police training***

Mr. Lawrence is of the opinion that Defendant Rosenthal's firing of five shots during the subject incident, was consistent with current police use of force training and practice while in the performance of an officer's duties (Lawrence's Report, p. 32).  This opinion should be precluded because Defendant Rosenthal, a lay witness in this case, has offered deposition testimony that his actions were consistent with the training he received at PBSO, and therefore any "specialized knowledge" on this issue is unnecessary to assisting the jury in deciding the issues of this case. (Rosenthal's deposition, 307- 310:11-6).  <u>See</u> Hendrix, 255 F.R.D. at 579.  Also, Mr. Lawrence

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 15 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 15

speaks in broad terms when he mentions "current police use of force training", and does not reference any specific training by Deputy Rosenthal with PBSO regarding this issue. Notwithstanding, the issue that will be presented to the jury is not whether Defendant Rosenthal's firing of five (5) shots was consistent with police practice, but whether his use of force was excessive.  Mr. Lawrence's opinion on this topic should therefore be precluded.

### III.   Christopher Lawrence's opinions extrapolated during his deposition

#### a. *The time it would take Defendant Rosenthal to take his first step*

Mr. Lawrence seeks to testify to "Force Science" principles, i.e. action, reaction, movement, and decision making on the part of Defendant Rosenthal during the subject incident. (Lawrence's deposition, 91-92: 8-16).   Force Science Institute is an institution located in Minnesota, headed by Dr. Bill Lewinsky, whose studies are primarily law enforcement related. (Lawrence's deposition, 92-93: 25-11; 95: 3-12).   Mr. Lawrence testified that he was involved with a study conducted by the Force Science Institute that studied how fast it took college student participants to take their first step when asked to run 30 feet from a starting position. (Lawrence's deposition, 96: 6-19).  The study then used participants wearing police equipment, substituting a 20 pound weighted belt for an officer's duty belt.  (Lawrence's deposition, 97-98: 21-16).  The study showed that a college student wearing gym attire would take his/her first step in 0.3 seconds, while a police officer wearing duty boots would take his/her first step in 0.9 seconds. (Lawrence's deposition, 98: 19-23).

When Mr. Lawrence was asked how this study pertained to the facts of the instant case, he responded that one of the individuals (Matthew Pollow), was wearing running shorts moving forward, and the police officer (Defendant Rosenthal) was wearing police equipment moving backwards.  (Lawrence's deposition, 100: 16-21).  He acknowledged that he did not know how

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 16 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 16

fast these individuals were moving at the time of the incident; he made no effort to determine the rate at which Matthew Pollow and Defendant Rosenthal were moving during the incident; that Matthew Pollow was not running; and that the study had participants run from a stopped position. (Lawrence, 100: 21-23; 102-103: 25-5; 107: 4-7; 108: 12-24; 111: 10 – 19).

It is clear that this study is unreliable and Mr. Lawrence should be precluded from offering his opinion on this issue. The study cannot be applied to the facts of this case because it does not take into account that Matthew Pollow and Defendant Rosenthal were in a constant state of movement in the moments leading up to the shooting (Rosenthal's deposition, 186-188:21-20); Defendant Rosenthal was walking backwards during the incident (Rosenthal's deposition 256: 7-16), and there was no movement that began from a starting position right before shots were fired.

The study is further unreliable because Mr. Lawrence did not know Matthew Pollow's and Defendant Rosenthal's respective rate of movement, and the study is silent as to the participants' weight, age, health issues, and physical limitations, all of which can influence the reaction time of individuals. The study did not take into account the weight of Defendant Rosenthal's duty belt, Matthew Pollow's and Defendant Rosenthal's respective weight, age, health issues, or physical limitations (if any). Mr. Lawrence cannot give the study's rate of error, which is one of the factors this Court must assess in determining whether Mr. Lawrence's testimony should be permitted. See Daubert, 509 U.S. at 593-594. Put simply, this study is unreliable and inapplicable to the facts of the instant case, because of all the aforementioned variables that were unaccounted for, and should accordingly be excluded.

### b. Mr. Lawrence's opinion regarding reaction time

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 17 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 17

Mr. Lawrence testified that he did not have an opinion on Defendant Rosenthal's reaction time during the subject incident, because he did not study Defendant Rosenthal, did not test him, and did not measure anything.  (Lawrence's deposition, 144: 7-12).  Despite this admission, Mr. Lawrence seeks to testify about general reaction times, parameters within which he claims 68 % of the population fit. (Lawrence's deposition, 144: 7-18). He defines reaction time as "the time from the beginning, from the presentation of the stimulus until the first evidence of movement in response to this." (Lawrence's deposition, 146: 13-19).   According to Mr. Lawrence, "the stimulus is going to be what the officer perceives as the threat, and he's going to have to explain when he perceived that threat."  (Lawrence's deposition, 146: 17-24).   The reaction time he proposes to present to the jury would be between this stimulus and when Defendant Rosenthal fired his weapon.  (Lawrence's deposition, 147: 10-15).

Mr. Lawrence's opinion on reaction times in the realm of police officers, is based on a study where officers were asked to draw their holstered weapons when presented with a light (stimulus), and fire the first shot.  (Lawrence's deposition, 129 – 131: 21-20).   He does not give the study's rate of error, and acknowledged that Defendant Rosenthal already had his weapon un-holstered when he exited his vehicle, and the only point at which he re-holstered it was after the shots were fired. (Lawrence's deposition, 136 – 137: 25-6).   Therefore, this study that Mr. Lawrence discusses in his deposition has no applicability to the facts of the case and is succinctly unreliable.

Mr. Lawrence attempted to testify about a police officer's reaction time in Wojtkielewicz v. Orlando, 2013 WL 992661 (N.D. Illinois 2013).   Specifically, and strikingly similar to the instant case, Mr. Lawrence wanted to "give expert testimony concerning police procedures and reaction time for human performance – specifically how long it takes for a police officer to draw

and fire a weapon when faced with a bodily threat." Id. at *1.  In granting plaintiff's Motion to exclude Mr. Lawrence's proposed testimony, the Court held that his "proposed testimony as to the range of time it takes police officers to decide to fire a weapon would not be helpful to the jury…There will be direct testimony of plaintiff and several police officers on the scene as to what happened…Average police officer reaction time, even if scientifically developed, is not a necessary or useful factor that need be added to the evidence in this case." Id.  The same holds true in the instant case: there will be direct testimony from Defendant Rosenthal and Deputy Ronald Cercy, regarding the incident as it unfolded.  Mr. Lawrence's testimony on reaction time would not be useful, and he should be precluded from testifying.

   c.      *The movement of Defendant Rosenthal's gun during the shooting*

   Mr. Lawrence testified that Defendant Rosenthal's gun was "probably" in a state of constant movement once the shots began.  (Lawrence's deposition, 163: 12-17).  This opinion is completely irrelevant to the issues in this case and should therefore be excluded on those grounds.  Daubert, 509 U.S. 579, 589-590 (1993).  Furthermore, Mr. Lawrence admitted that he did not attempt to determine the movement of his weapon during the shooting sequence, and his opinion is based on his experiences firing his own pistol, and colleagues also firing their pistols.  Mr. Lawrence's opinion is not based on any scientific, technical, or specialized knowledge; his theory has not been tested; has not been subjected to publication and peer review; and it is not generally accepted in the community of law enforcement.

   d.      *The firmness of Defendant Rosenthal's grip on his pistol*

   Mr. Lawrence seeks to offer an opinion that **generally** officers hold on to the grip of their pistols fairly firmly, and acknowledged that he cannot quantify this.  (Lawrence's deposition, 164: 9-14).  Defendant Rosenthal's grip on his weapon is irrelevant and will not aid the jury in

Case 9:15-cv-80521-DMM   Document 80   Entered on FLSD Docket 01/15/2016   Page 19 of 21

Pavlov v. Bradshaw, et. al.
Case No.: 9:15-cv-80521-DMM
Page 19

determining the facts at trial.   Mr. Lawrence's opinion is unquantified, unsupported by any studies or data, unreliable, and thereby inadmissible.

### e.    *The alleged misalignment of Defendant Rosenthal's gun*

Mr. Lawrence testified that he does not know the alignment of Defendant Rosenthal's gun, and seeks to give parameters on this issue instead (Lawrence's deposition, 171: 4-9).  Mr. Lawrence acknowledged that his opinion regarding misalignment does not have anything to do with Defendant Rosenthal's use of force against Matthew Pollow (Lawrence's deposition, 165: 1-5).  He testified that the jury needs to understand "how much the back of the gun, the rear sights, and the front of the gun, the front sights, the extent - - to what extent can they be misaligned, and what kind of impact does that actually have." (Lawrence's deposition, 165: 17-21).  This entire line of testimony is clearly irrelevant and would be unhelpful to the jury. Whether Defendant Rosenthal's weapon was misaligned has nothing to do with the allegations raised in Plaintiff's Complaint [DE 1], and despite Mr. Lawrence's assertions, would not assist the jury in determining the facts.  His opinion is not based on any scientific, technical, or specialized knowledge; his theory has not been tested; has not been subjected to publication and peer review; and it is not generally accepted in the community of law enforcement.

### IV.  Christopher Lawrence's general statements in his report that offer no opinions[2]

Mr. Lawrence dedicates numerous pages in his report to general statements that have no bearing on this case.  For example, he speaks to officers in the 1980's and 1990's receiving self-defense training, and an evolution of training that returned to training in the 1970's (Lawrence's Report, 8-9 ¶ 27-28).  He also speaks about different types of training law enforcement officers in general receive, such as Defensive Tactics Training (Lawrence's Report, p.10-11).  Mr.

---

[2] Due to the page limit set forth in Local Rule 7.1, Plaintiff is unable to address each paragraph of Mr. Lawrence's report that contains superfluous and general statements.  These sections of his report are on their face irrelevant and inadmissible pursuant to Daubert.

Lawrence acknowledged, however, that Defendant Rosenthal did not use any defensive tactics towards Matthew Pollow (Lawrence's deposition, 137: 13-23).  These statements, and the other superfluous statements throughout his report, are irrelevant, not based on any scientific, technical, or specialized knowledge; do not offer any assistance to the jury in deciding the facts of the case, and should accordingly be precluded.

## Local Rule 7.1 Certificate

Plaintiff's counsel conferred with opposing counsel in a good faith effort to resolve the issues outline in this motion, and was unable to do so.

## CONCLUSION

Based upon the lack of a comprehensive, scientific basis for Mr. Lawrence's opinions, the unreliability of his opinions, and the likelihood of prejudice his testimony will have on the jury's fact-finding function, Mr. Lawrence's expert testimony fails to meet the criteria mandated by Daubert and should be excluded from the trial of this case based on the foregoing authority.

WHEREFORE, the expert opinion testimony of Christopher Lawrence should be excluded from evidence.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2016 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

s/NICHOLAS C. JOHNSON
NICHOLAS C. JOHNSON (Florida Bar No.: 041227)
Email:  njohnson@cohenmilstein.com
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone:  (561) 515-1400
Facsimile:   (561) 515-1401
Attorneys for Plaintiff

## <u>SERVICE LIST</u>

Summer M. Barranco, Esquire
summer@purdylaw.com; melissa@purdylaw.com
Purdy, Jolly, Giuffreda & Barranco, P.A.
2455 East Sunrise Blvd.
Suite 1216
Ft. Lauderdale, FL  33304
Phone: (954)-462-3200
Fax: (954)-462-3861
Attorneys for Palm Beach Sheriff's Office and Evan Rosenthal